**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Christopher BEALE, Defendant-Appellant.**

**No. 80–1652.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1981.

Resubmitted June 27, 1983.

Decided Oct. 24, 1983.

Bruce R. Castetter, Asst. U.S. Atty., on the brief; Peter K. Nunez, U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Dan Alfaro, Corpus Christi, Tex., Paul H. Duvall, San Diego, Cal., for defendant-appellant.

Before ELY, FLETCHER, and REINHARDT, Circuit Judges.

ELY, Circuit Judge:

On July 21, 1982, we issued an amended opinion reversing the District Court's judgment in the subject appeal. *United States v. Beale,* 674 F.2d 1327 (9th Cir.1982) (*"Beale I"*). On June 27, 1983, the Supreme Court vacated our opinion and issued its mandate.[1] The mandate remands the cause to us and directs our "further consideration" of our opinion in the light of the Supreme Court's opinion in *United States v. Place,* 462 U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

After careful consideration of the Supreme Court's opinion in *Place,* we conclude that this case must be remanded to the District Court to permit it to determine whether the canine investigation of Beale's luggage was supported by articulable, founded suspicion.

I. *Effect of the Supreme Court's Analysis in* Place *on Our Decision in* Beale I

In *Beale I,* our holding was limited to the stipulated facts, which presented only two issues: (1) Whether a police officer's use of a trained canine, with an established record of reliability, to sniff the exterior of a

---

1. *United States v. Beale,* —— U.S. ——, 103 S.Ct. 3529, 77 L.Ed.2d 1382 (1983).

traveler's luggage, located in an airport, to detect the presence of contraband, implicates the Fourth Amendment; and (2) if so, to what extent the officer's use of the canine is limited by the Fourth Amendment. We held

> that the use of a canine's keen sense of smell to detect the presence of contraband within personal luggage is a Fourth Amendment intrusion, albeit a limited one that may be conducted without a warrant and which may be based on an officer's "founded" or "articulable" suspicion rather than probable cause.

674 F.2d at 1335 (footnotes and emphasis omitted).

Because the district court had not made any factual determination with respect to the quantum of prior suspicion possessed by the officers who conducted the canine investigation of Beale's luggage, we remanded to allow the District Court to make an appropriate finding. *Id.* at 1330, 1336.

In *Place,* the Supreme Court was presented with two entirely different Fourth Amendment issues: (1) Whether the seizure and detention of a traveler's luggage, located in an airport, may be effected without a warrant and on less than probable cause; and (2) if so, to what extent the seizure and detention are limited by the Fourth Amendment. *See* 103 S.Ct. at 2639. In resolving these issues, the Court reasoned by analogy to *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882–1883, 20 L.Ed.2d 889 (1968), and balanced the importance and difficulty of the Government's task in impeding the transportation of contraband against the degree of Fourth Amendment intrusion involved in a limited detention of luggage. 103 S.Ct. at 2642–2644. The Court held that

> when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, pro-

vided that the investigative detention is properly limited in scope.

*Id.* at 2644.

Drug Enforcement Administration agents had seized Place's luggage upon his arrival at New York's LaGuardia Airport and transported the luggage to New York's Kennedy Airport where, approximately ninety minutes after the initial seizure, the agents exposed the luggage to a narcotics detection dog. *Id.* at 2640. The Court concluded that the length of time for which the police detained Place's luggage exceeded the permissible scope of a detention premised, as it was, solely on reasonable suspicion. *Id.* at 2645–46. The Court upheld the Second Circuit's judgment that the evidence ultimately seized was inadmissible as the tainted fruit of the unlawful detention.[2]

In *Beale I,* questions concerning the existence, duration, and validity of a detention of Beale's luggage prior to the canine sniff were not presented in the facts as stipulated by the parties. We therefore addressed the dog sniffing question in isolation. Under *Place,* any detention incident to the sniff would be permissible if it were supported by articulable, founded suspicion and if it were not unreasonable in length and scope. *See* 103 S.Ct. at 2644. It was stipulated that Beale checked his luggage with a "skycap" at Florida's Fort Lauderdale Airport and left to board his flight. The detection dog and its handler were already at the Fort Lauderdale terminal. Agents exposed the exterior of Beale's luggage to a canine sniff during the period between the time Beale checked his bags and the time his flight took off. The duration of the detention is not revealed. Under *Place,* a brief and limited detention of Beale's luggage would have been reasonable if the initial sniffing had been warranted on the basis of reasonable suspicion.

We now turn to the only issue we decided in *Beale I:* if we assume that a canine sniff is performed in such a manner that no detention whatsoever of the luggage were required, would the Fourth Amendment de-

---

2. *See United States v. Place,* 660 F.2d 44 (2d Cir.1981).

mand that *any* prior suspicion exist that the luggage may have contained contraband?

In *Place*, after concluding that reasonable suspicion justified a brief detention of luggage for the purpose of a minimally intrusive investigation, the Supreme Court considered the unique nature of canine sniff investigations:

> We are aware of no other investigative procedure that is so limited, both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

103 S.Ct. at 2644–45.

We recognize that this passage is dictum and are aware that the Supreme Court has often remarked that its dicta are not binding. *See McDaniel v. Sanchez*, 452 U.S. 130, 141, 101 S.Ct. 2224, 2231, 68 L.Ed.2d 724 (1981); *Kastigar v. United States*, 406 U.S. 441, 454–55, 92 S.Ct. 1653, 1661–62, 32 L.Ed.2d 212 (1971); *Permian Basin Area Rate Cases*, 390 U.S. 747, 775, 88 S.Ct. 1344, 1364, 20 L.Ed.2d 312 (1967); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 120, 179, 5 L.Ed. 257 (1821). The *Place* dictum, however, is so recent and appears to have been so carefully considered that we feel obliged to apply it to the case at hand. We turn, then, to the careful consideration of its meaning.

After thoughtful study, we conclude that the Court's statement that a canine sniff investigation "did not constitute a 'search' within the meaning of the Fourth Amendment," 103 S.Ct. at 2645, must be read in the context of the entire decision in *Place*.

■ The Fifth Circuit has observed that "[t]he decision to characterize an action as a search is in essence a conclusion about whether the fourth amendment applies at all." *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 476 (5th Cir.1982), *cert. denied*, ── U.S. ──, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). The term "search," however, though conceptually convenient, is not essential to the conclusion that the investigative activity is subject to the Fourth Amendment. *See Terry*, 392 U.S. at 19, 88 S.Ct. at 1879. The crucial inquiry is whether the investigative activity is the kind of intrusion a free society is willing to tolerate if unregulated by constitutional constraints. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 403 (1974); *see United States v. Solis*, 536 F.2d 880, 881 (9th Cir.1976). The general consensus appears to be that canine investigations are or ought to be subject to *some* limitations. In recognizing that canine investigations implicate the Fourth Amendment, *Beale I* took the stance essential to the imposition of some level of Fourth Amendment scrutiny over the procedure.

■ In *Place*, the Supreme Court remarked that a canine sniff was not itself a "search" only after it concluded that any detention of luggage for the purpose of performing a canine sniff investigation would implicate the Fourth Amendment. The Court indicated that such a detention would be valid only if supported by the degree of suspicion necessary to justify the investigation for the purpose of which the luggage was seized. *See* 103 S.Ct. at 2644 ("Obviously, if this investigative procedure is itself a search requiring probable cause, the initial seizure of [Place's] luggage for the purpose of subjecting it to the sniff test—no matter how brief—could not be justified on less than probable cause."). In concluding that a canine sniff was not a "search," the Court indicated that the Fourth Amendment imposed no more stringent requirement for performance of a canine sniff beyond the reasonable suspicion required to justify the initial detention of the luggage. We do not believe that *Place* should be read to validate a canine sniff in the absence of the reasonable suspicion required for a minimally intrusive detention of luggage, whenever fortuity makes a canine sniff feasible without any seizure of

594

the luggage. We instead interpret *Place* to conclude that no additional suspicion is required to justify exposing luggage to a trained canine once founded or articulable suspicion has been established.

## II. *Review of* Beale I

Opinions concerning the fourth amendment significance of canine investigations, rendered after *Beale*'s publication, have offered no new insights into the dog sniffing question and, indeed, have perpetuated arguments that were and continue to be "short on reasoning." 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 283 (1978).[3] In an effort to demonstrate that canine investigations do not fit within the parameters of the Fourth Amendment, courts recite the arguments that dogs sniff only the airspace surrounding luggage in which there is no reasonable expectation of priva-

cy,[4] that there is no legal difference between an officer's detection of a "plain smell" and a dog's detection of the escaping odor of contraband, and the related argument that the dog's senses merely "enhance" the senses of the police.[5] We expressly considered and rejected these arguments in *Beale I* and need not pursue further rebuttal here.[6]

In holding that canine investigations *do* fit within the parameters of the Fourth Amendment, *Beale I* has been criticized for failing to fall in line with the bulk of authority. *See People v. Mayberry*, 31 Cal.3d 335, 340, 182 Cal.Rptr. 617, 644 P.2d 810 (1982). Despite the general proffer of arguments tending to exclude canine investigations from Fourth Amendment control, no federal court has yet upheld a canine investigation in the face of a record demonstrating a *lack* of prior individualized suspicion.[7] Several courts have expressly noted

---

**3.** In *United States v. Waltzer*, 682 F.2d 370, 373 (2d Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983), the Second Circuit reaffirmed its ruling in *United States v. Bronstein,* 521 F.2d 459 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), an opinion which, we argued in *Beale I,* had been implicitly overruled by the Supreme Court in *Arkansas v. Sanders,* 442 U.S. 753, 763–65, 99 S.Ct. 2586, 2592–94, 61 L.Ed.2d 235 (1979). 674 F.2d at 1330–31 & n. 10. We argued that the Court's affirmation of the expectation of privacy in luggage refuted Bronstein's reasoning that there is no expectation of privacy in luggage transported by plane. We note that *Waltzer* apparently abandoned reliance on *Bronstein*'s reduced expectation on privacy rationale. *See* 682 F.2d at 373.

In *People v. Mayberry,* 31 Cal.3d 335, 341–42, 182 Cal.Rptr. 617, 644 P.2d 810 (1982), the California Supreme Court upheld a conviction based on evidence obtained through a dragnet canine sniffing investigation of luggage. In so doing, the Court disapproved two appellate court opinions cited in *Beale I, see* 674 F.2d at 1335 n. 18, *People v. Lester,* 101 Cal.App.3d 613, 161 Cal.Rptr. 703, *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980), and *People v. Furman,* 30 Cal.App.3d 454, 106 Cal.Rptr. 366 (1973), to the extent that these opinions upheld a requirement of reasonable suspicion prior to a canine investigation. *See* 31 Cal.3d at 339–40, 182 Cal.Rptr. 617, 644 P.2d 810.

**4.** *See, e.g., United States v. Waltzer,* 682 F.2d 370, 373 (2d Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983);

*United States v. Goldstein,* 635 F.2d 356, 360–61 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981); *People v. Mayberry,* 31 Cal.3d 335, 341, 182 Cal.Rptr. 617, 644 P.2d 810 (1982).

**5.** *See, e.g., Horton v. Goose Creek Independent School District,* 690 F.2d 470, 477 (5th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *United States v. Sullivan,* 625 F.2d 9, 13 (4th Cir.), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1374, 67 L.Ed.2d 352 (1980).

**6.** We rejected the "airspace" argument at 674 F.2d at 1333–34. The physical penetration test to determine Fourth Amendment coverage of police investigative activities has long been abandoned. *Katz v. United States,* 389 U.S. 347, 352–53, 88 S.Ct. 507, 511–12, 19 L.Ed.2d 576 (1967). We rejected the "plain smell" arguments at 674 F.2d at 1332–33. *See also* 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 283–84 (1978).

**7.** In *United States v. Race,* 529 F.2d 12 (1st Cir.1976), the First Circuit upheld a dragnet canine inspection of a warehouse containing commingled domestic and international freight. *Id.* at 14 & n. 2. *Race* is distinguishable, however, as involving a customs inspection in which traditional Fourth Amendment constraints are extremely relaxed. *See United States v. Odland,* 502 F.2d 148, 151 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974); *Klein v. United States,* 472 F.2d 847, 849 (9th Cir.1973).

the existence of prior suspicion in affirming the validity of the sniff,[8] and some have stressed that the court was not confronted with an indiscriminate "dragnet" type of investigation.[9] We have little doubt that if faced with the dragnet sniffing of human beings for evidence of crime, most of our colleagues would join in outrage at the egregious violation of the reasonable expectation of privacy in one's body.[10] The effect of holding that a canine sniff investigation requires no articulable suspicion in circumstances in which the luggage is not detained, even briefly, in order that the investigation be performed, would be to encourage the indiscriminate use of roving trained dogs at public airports. We decline to reach this result.[11]

■ The selectivity and other unintrusive aspects of canine investigations of luggage do not exempt the process from Fourth Amendment scrutiny but, rather, make application of the traditional probable cause and warrant requirements unnecessary to protect the privacy rights of those travelers whose luggage is under investigation. The majority of courts that have addressed the dog sniffing question have

confused the relative unintrusiveness of the investigation with its eligibility for inclusion within the scope of the Fourth Amendment. The unintrusiveness of a search does not reduce, or have any effect on, the basic expectation of privacy in the thing searched. In *Beale I*, we held simply that articulable, individual suspicion renders the sniffing of personal luggage, located in an airport, *reasonable* under the Fourth Amendment. It may be that, although the expectation of privacy in luggage is one of the highest order, *see generally United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the greater intrusiveness occasioned by the sniffing of human beings calls for a higher degree of antecedent suspicion than that necessary for a sniff of luggage.

■ We adhere to our position in *Beale I* in the belief that it presents a coherent framework for judicial oversight of canine investigations. Rather than follow an illogical approach of ignoring the source of the judicial authority to establish reasonable restraints on canine investigations, we think it infinitely more sensible to recognize that the scope of the Fourth Amend-

8. *See, e.g., United States v. Goldstein,* 635 F.2d 356, 362 n. 10 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981); *United States v. Klein,* 626 F.2d 22, 27 (7th Cir.1980); *United States v. Sullivan,* 625 F.2d 9, 11–12 (4th Cir.), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1374, 67 L.Ed.2d 352 (1980).

9. *See, e.g., United States v. Klein,* 626 F.2d 22, 27 (7th Cir.1980); *United States v. Bronstein,* 521 F.2d 459, 463 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

10. The Fifth Circuit, in *Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983), held that the sniffing of students constituted a "search" requiring prior individualized suspicion. Id. at 479. In so holding, *Horton* implicitly disapproved *Doe v. Renfrow,* 631 F.2d 91, 92 (7th Cir.1980), *cert. denied,* 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981), in which the Seventh Circuit held that the sniffing of students was not a "search" under the Fourth Amendment. The *Horton* court noted that *Renfrow* has been universally criticized by the commentators. 690 F.2d at 478 & n. 14. In establishing a requirement of prior suspicion, *Horton* stressed the intrusive manner in which the dogs sniffed the students: "sniffing

around each child, putting [the dog's] nose *on* the child and scratching and manifesting other signs of excitement in the case of an alert...." *Id.* at 479 (emphasis in original). *See also United States v. Bronstein,* 521 F.2d 459, 462 n. 5 (2d Cir.1975) (observing that the court was not presented with the issue of a personal search but upheld only a canine search of luggage), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

11. As we stated in *Beale I,* we do not intend any dilution of Fourth Amendment rights through application of a "sliding-scale" of Fourth Amendment protections. 674 F.2d at 1335–36 n. 20, *quoting* Amsterdam, *supra,* at 393. We approve a reduced standard of Fourth Amendment protection as an eminently justifiable preference to the "all or nothing" alternatives: The imposition of probable cause and warrant requirements to the kind of canine investigation at issue would far exceed the protection warranted by the intrusion, while "[n]othing would invoke the spectre of a totalitarian police state as much as the indiscriminate, blanket use of trained dogs at roadblocks, airports, and train stations." *Id.*

ment encompasses this investigative technique. Moreover, the restraint adopted here is the eminently reasonable one of simply requiring that before using a trained dog to investigate the very private contents of personal luggage for evidence of crime, the police have *some articulable reason*, not necessarily amounting to probable cause, to suspect that the luggage may contain contraband.

Because the District Court concluded that no showing of prior suspicion was required to validate the sniff of Beale's luggage, we remand to the District Court to make the necessary factual determination. If the District Court finds that the Fort Lauderdale investigation was supported by articulable, founded suspicion, then the District Court would be correct in its prior ruling that "probable cause for [Beale's] arrest was established by the narcotic dog's actions in Florida, followed up by the narcotic dog alerting again in San Diego." Reporter's Transcript at 77.

If, however, the District Court finds that the Fort Lauderdale intrusion was based on a constitutionally deficient level of suspicion, it must revise its probable cause determination concerning Beale's arrest and the issuance of the search warrant in San Diego, excluding evidence tainted by the Florida dog sniffing.[12]

The judgment of conviction is therefore

VACATED AND REMANDED, WITH DIRECTIONS.

REINHARDT, Circuit Judge, dissenting:

I dissent most reluctantly. I do so only because I believe that *United States v. Place*, 462 U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), leaves me no alternative.

Prior to *Place*, Judge Ely wrote an excellent, well-reasoned, and scholarly opinion, in which I readily concurred, holding that a dog sniff of luggage constitutes a fourth amendment intrusion. *United States v. Beale*, 674 F.2d 1327 (9th Cir.1982). I agreed with Judge Ely that under our Constitution, law enforcement officials could not simply, without any justification, use dogs to sniff luggage or other containers designed to hold personal and private articles. Accordingly, we adopted a standard requiring "founded" or "articulable" suspicion before such an invasion of constitutionally protected interests could concur. Since then, however, it seems to me that the Supreme Court has made it clear in *Place* that it does not agree that the Constitution affords citizens as much protection as we thought it did.

I agree with the majority that we should follow the Supreme Court's statements in *Place* regarding dog sniffing, even though they may be dictum. I also agree that the critical language is the following:

[W]e conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

103 S.Ct. at 2644-45.

My only disagreement with the majority is over the effect of the Supreme Court's language. I think it leaves no room for application of the fourth amendment to dog sniffs of luggage located in a public place.[1] While the term "search" is flexible and may refer to a "full blown search" or a "limited search", i.e., a simple pat down, there still must be a "search" or a "seizure" before a fourth amendment violation can occur. *See Terry v. Ohio*, 392 U.S. 1, 19, 24-25, 88 S.Ct. 1868, 1881, 1882, 20 L.Ed.2d 889 (1968). Thus, I believe that we cannot require "founded" or "articulable" suspicion before a dog sniff of luggage located in a public place may be conducted.

12. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

1. Certainly *Place* does not authorize the use by law enforcement officials of dogs to sniff persons. As we said in our earlier *Beale* opinion, such use of dogs "is normally inconsistent with the concepts embodied in our Constitution." 674 F.2d at 1336 n. 20. I do not believe that *Place* in any way requires us to change that view.