UNITED STATES of America,
Plaintiff-Appellee,

v.

John Christopher BEALE,
Defendant-Appellant.

No. 80–1652.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En Banc
April 11, 1984.

Decided July 2, 1984.

As Amended July 20, 1984.

Dan Alfaro, Corpus Christi, Tex., Paul H. Duvall, San Diego, Cal., for defendant-appellant.

Ray Edwards, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, Chief Judge, CHOY, WALLACE, SNEED, HUG, SKOPIL, SCHROEDER, PREGERSON, POOLE, CANBY, and BOOCHEVER, Circuit Judges.

CHOY, Circuit Judge:

This appeal presents the sole question of whether a sniff of luggage by a trained narcotics detection dog constitutes a "search" within the meaning of the Fourth Amendment. We hold that it does not.

I.  *Background*

Florida detectives observed John Beale and Joseph Pulvano check three pieces of luggage with a skycap at the National Airlines terminal at Fort Lauderdale, but then saw them separate inside the terminal and obtain their seating assignments from the ticket counter separately. After Beale and Pulvano sat together at the boarding area,

one detective approached them and questioned them briefly. Pulvano exhibited several signs of abnormal anxiety, and admitted that he had been earlier arrested on a narcotics charge.

The detectives then had "Nick," a narcotics detection dog, sniff around the suspects' luggage in the checked baggage area. Nick alerted to Beale's suitcase. From that point, the suspects were kept under surveillance until they reached San Diego. There, "Duster," another narcotics detection dog, alerted to Beale's suitcase and shoulder bag. Agents in San Diego then searched Beale's luggage pursuant to a warrant, discovering contraband.

Beale unsuccessfully moved to suppress the evidence obtained on the ground that the Fort Lauderdale sniff illegally tainted that evidence. Beale was then convicted of possession of cocaine with intent to distribute, and of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a), 846.

Beale appealed to this court, and we vacated and remanded for a determination of whether the Florida agents had articulable suspicion justifying the dog sniff by Nick. *United States v. Beale*, 674 F.2d 1327 (9th Cir.1982). The Government petitioned for certiorari, and the Supreme Court, which had recently decided *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), vacated our judgment and remanded the case to us for further consideration in light of that decision. —— U.S. ——, 103 S.Ct. 3529, 77 L.Ed.2d 1382 (1983). From the panel's decision on remand from the Supreme Court, 731 F.2d 590 (9th Cir.1983), this court granted rehearing en banc. 728 F.2d 411 (9th Cir. 1984). We now affirm the judgment of conviction.

II. *Discussion*

In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court stated:

We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which the information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

103 S.Ct. at 2644–45 (citation omitted). Although the Court majority has been criticized for exploring this issue because its resolution was unnecessary to the Court's decision, *see, e.g., id.* at 2651 (Brennan, J., concurring); *id.* at 2653 (Blackmun, J., concurring); 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.2(f), at 81 (Supp.1984), the Court, in a recent case involving the legality of a chemical field test to disclose the presence of contraband, characterized its statement in *Place* as a holding, saying that "the Court held that subjecting luggage to a

'sniff test' by a trained narcotics detection dog was not a 'search' within the meaning of the Fourth Amendment." *United States v. Jacobsen,* —— U.S. ——, ——-——, 104 S.Ct. 1652, 1662, 80 L.Ed.2d 85 (1984). Whether or not the statement in *Place* was a holding or dictum, the Supreme Court has clearly directed the lower courts to follow its pronouncement.

The essence of the Supreme Court's expositions in *Place* and *Jacobsen,* which we apply here, is that the investigative technique employed here is not considered to be a "search" since (1) it discloses *only* the presence or absence of a contraband item, and (2) its use "ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods." *Place,* 103 S.Ct. at 2644.

### A. *Information Disclosed by the Investigative Technique*

The Court in *Place* reasoned that a dog sniff is an investigative technique *sui generis* in that it "does not expose noncontraband items that otherwise would remain hidden from public view ...." 103 S.Ct. at 2644. The Court emphasized this point in *Jacobsen* when it stated that "the *reason* [the dog sniff in *Place* ] did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items." *Jacobsen,* —— U.S. at —— n. 24, 104 S.Ct. at 1662 n. 24. We therefore see no need to reexamine our cases holding that the use of investigative devices revealing more than the presence of contraband, albeit in limited fashion, does constitute a search. *See, e.g., United States v. Henry,* 615 F.2d

1223, 1227 (9th Cir.1980) (holding that X-ray scan is a search because it "reveals, to a certain extent, articles the owner has chosen to conceal from view"); *United States v. Doran,* 482 F.2d 929, 932 (9th Cir.1973) (implicitly holding that a magnetometer scan to detect the presence of metal is a search).

### B. *Intrusiveness of the Investigative Method*

We recognize that the Court in *Place* validated only "the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine." 103 S.Ct. at 2644–45. In declaring that the dog sniff in *Place* did not constitute a search, the Court assumed that the particular method of using the dog "ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods." 103 S.Ct. at 2644.

In *Place,* as well as in *Jacobsen,* the investigative technique did not require any contact with the owner of the property being investigated, as the property investigated was located in a baggage area. Here, we are not confronted with a case in which the detection dog conducted a sniff of a person rather than an inanimate object,[1] or a sniff of luggage that a person was carrying at the time.[2] The investigative technique applied to Beale's luggage caused "virtually no annoyance and rarely even contact with the owner of the bags, unless the [test result] is positive." *United States v. Waltzer,* 682 F.2d 370, 373 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103

---

1. *See, e.g., Horton v. Goose Creek Independent School District,* 690 F.2d 470, 479 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (holding that use of dogs to sniff students in class was a search); Loewy, *The Fourth Amendment as a Device for Protecting the Innocent,* 81 Mich.L.Rev. 1229, 1246–47 (1983) ("the very act of being subjected to a body sniff by a German Shepherd may be offensive at best or harrowing at worst to the innocent sniffee") (footnote omitted).

2. *See Doe v. Renfrow,* 451 U.S. 1022, 1026 n. 4, 101 S.Ct. 3015, 3018 n. 4, 69 L.Ed.2d 395 (Brennan, J., dissenting from denial of certiorari) (noting that cases allowing dog sniffs "involved the sniffing of inanimate and *unattended* objects") (emphasis added); 1 W. LaFave, *supra,* § 2.2(f), at 84 (Supp.1984) ("a sniff directed at objects being carried by the person is no less objectionable, especially when done in an airport corridor in circumstances amounting to a public accusation of crime.").

S.Ct. 3543, 77 L.Ed.2d 392 (1983). There is no evidence that Beale himself was detained, even for a moment, due to that sniff.

█ We hold that the investigation of Beale's luggage in these circumstances did not interfere, in any meaningful way, with Beale's possessory interest in his luggage. We realize that the Supreme Court in *Place* equated the seizure of a traveler's luggage to seizure of his person when seizure of luggage subjects the person "to the possible disruption of his travel plans in order to remain with his luggage or arrange for its return." 103 S.Ct. at 2645 (footnote omitted). In *Place*, however, DEA agents held the suspect's luggage between a Friday afternoon and the following Monday morning. The agents never made it "absolutely clear how they [planned] to reunite the suspect and his possessions at some future time and place." 103 S.Ct. at 2645 n. 8 (quoting 3 W. LaFave, *supra*, § 9.6, at 61 (Supp.1982)). Consequently, the Court held that Place's luggage was seized.

In contrast, Beale was not detained or otherwise inconvenienced, nor were his travel plans interfered with in the slightest, while Nick and the other Florida detectives did their work. Any interference with Beale's possession of his luggage was de minimis. *Cf. United States v. Jacobsen,* —— U.S. at —— & n. 28, 104 S.Ct. at 1663 & n. 28 (discussing de minimis invasions of Fourth Amendment interests); *United States v. Van Leeuwen,* 397 U.S. 249, 252, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970) (one-day detention of packages placed in the mail not a seizure). There was thus no seizure of his property necessitating probable cause or reasonable suspicion. *See Jacobsen,* —— U.S. at ——, 104 S.Ct. at 1656 (defining a seizure of property).

III. *Conclusion*

The canine sniff of Beale's luggage conducted at the Fort Lauderdale Airport was not a "search" under the Fourth Amendment. Beale's motion to suppress the evidence on the ground that it was illegally tainted by the Fort Lauderdale sniff was properly denied. Accordingly, the judgment of conviction appealed from is

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent for the reasons that Judge Ely expressed in two excellent panel opinions: *Beale I,* 674 F.2d 1327 (9th Cir.1982), and *Beale II,* 731 F.2d 590 (9th Cir.1983). I write further mainly to point out that the majority, in telling us that a dog sniff is not a *search,* fails to tell us what it *is.* I submit that the intruding canine nose, *Beale I,* 674 F.2d at 1334, like the intruding eye and the uninvited ear, *Katz v. United States,* 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), deserves a more exacting Fourth Amendment inquiry than the majority has given it.

In holding that the police may employ a trained narcotics detection dog to sniff Beale's luggage without implicating the search clause of the Fourth Amendment, the majority makes three errors. First, it denigrates the reasonable expectation of privacy that travelers retain in their luggage. Second, it fails adequately to explain how an obvious intrusion into someone's personal effects—his suitcases—is not a search. Finally, the majority never even reaches the critical question the panel faced below: whether the sniff, if not a full-blown search, nonetheless constitutes an investigatory stop triggering the more modest Fourth Amendment standards of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I consider each matter in turn.

A. *Personal Effects and the Fourth Amendment*

The majority makes light of using a dog to sniff luggage for cocaine because this technique is less intrusive than having the dog sniff the person who owns the luggage. The majority also tells us that the sniff in this case caused Beale no inconvenience or embarrassment because the Florida detectives, unlike the police in *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), detained nei-

ther the man nor his luggage for an appreciable length of time.

Behind this rationalization lurks the assumption that a person's privacy interest in his luggage is less important than his privacy interest in his person or home. I agree that sniffing the luggage rather than the owner is somewhat less intrusive. I disagree, however, with the premise that no intrusion at all occurs.

This is a "what you don't know, won't hurt you" approach. It permits the authorities secretly to inspect luggage whenever the owner happens to become separated from it. It thumbs its nose at the rule that "[n]o less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner [by placing them in a locked suitcase] is due the protection of the Fourth Amendment Warrant Clause." *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977). The Fourth Amendment, after all, protects from unreasonable searches and seizures "[t]he right of the people to be secure in their persons, houses, papers, and *effects*." U.S. Const. amend. IV (emphasis added).

"[L]uggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Arkansas v. Sanders*, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979). Luggage does not lose its Fourth Amendment protection simply because it is highly mobile, *see id.* at 764–65, 99 S.Ct. at 2593–94, or because it turns up in public places, *see id.* at 767, 99 S.Ct. at 2594 (Burger, C.J., concurring in the judgment). To the traveler away from home, the closed suitcase containing personal belongings represents one of the few bulwarks of privacy. Therefore, I cannot agree that Fourth Amendment protections are inoperative merely because the thing searched is luggage rather than the owner.

### B. *The Dog Sniff as a Search*

The majority believes that a canine sniff does not implicate the Fourth Amendment. Again I disagree. The critical question in every Fourth Amendment case is whether the intrusion at issue is one that a free society is willing to tolerate. *United States v. Solis*, 393 F.Supp. 325, 328 (C.D. Cal.1975), *aff'd in relevant part*, 536 F.2d 880, 881 (9th Cir.1976); *see* 1 W. LaFave, *Search and Seizure* § 2.2(f), at 286 (1982); Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 403 (1974). I do not believe that a free society should be willing to tolerate the spectre of trained dogs randomly sniffing private luggage to help the police determine whether someone is carrying contraband. "It would be intolerable if the police, in no way limited by the Fourth Amendment, were free to utilize dogs to undertake 'a wholesale examination of all baggage in the hope that a crime might be detected.'" 1 W. LaFave, *supra* § 2.2(f), at 286 (quoting *United States v. Bronstein*, 521 F.2d 459, 465 (2d Cir.1975) (Mansfield, J., concurring), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976)). Yet the majority moves in this direction.

The authorities invaded Beale's reasonable expectation of privacy in the contents of his luggage when they employed a trained dog to sniff for drugs. As Judge Ely wisely pointed out, the detectives needed the dog; they could not detect the substance by relying on their unaided senses. *Beale I*, 674 F.2d at 1333–34. When using dogs to ferret out contraband, the police are not simply walking around hoping to come across evidence of a crime. Instead, they are investigating. They are trying to find something. They are seeking evidence in hidden places. If this activity does not qualify as a "search," then I am not sure what does. The majority, in any event, offers little reasoning to back up its finding that the intrusion was not a search.

To me, there is little practical difference between employing a trained dog to sniff luggage and permitting a police officer, acting without consent or a search warrant, to view the suitcase through an x-ray machine, *United States v. Henry*, 615 F.2d 1223, 1227 (9th Cir.1980), or simply to open it, *United States v. Bronstein*, 521 F.2d 459, 464 (2d Cir.1975) (Mansfield, J., concurring), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). In each

instance, the police learn about the presence or absence of particular contraband in the suitcase. The fact that, in using a trained dog, the authorities learn less information about the remaining contents (such as clothing, toilet articles, and books) matters little if the information leads to the same result—namely, detecting and exposing illicit items.

### C. The Dog Sniff as a Terry Investigative Stop

Even if I were satisfied that the dog sniff at issue was not a search, I would still adhere to Judge Ely's reasoning in *Beale I* that the sniff was an invasion of privacy deserving *some* level of Fourth Amendment scrutiny. Judge Ely thought that

what Beale sought to exclude when he locked his suitcase was not only the intruding human eye—it was also the intruding canine nose. One who reposes his personal effects, including contraband, in a locked suitcase is surely entitled to assume that a trained canine will not broadcast its incriminating contents to the authorities.

*Beale I*, 674 F.2d at 1334 (footnote and citations omitted).

But despite finding that Beale retained an expectation of privacy against having the contents of his suitcase "broadcast" to the police, Judge Ely still would not have required the authorities to establish full probable cause to conduct the dog sniff. Instead, he would have required only that the officers establish a " 'founded' " or " 'articulable' " suspicion of crime under the standards set out in *Terry v. Ohio*, 392 U.S. 1, 20–27, 88 S.Ct. 1868, 1879–83, 20 L.Ed.2d 889 (1968). *Beale I*, 674 F.2d at 1335. As Judge Ely explained in *Beale II:*

Rather than follow an illogical approach of ignoring the source of the judicial authority to establish reasonable restraints on canine investigations, we think it infinitely more sensible to recognize that the scope of the Fourth Amendment encompasses this investigative technique. Moreover, the restraint adopted here is the eminently reasonable one of simply requiring that before using a trained dog to investigate the very private contents of personal luggage for evidence of crime, the police have *some articulable reason,* not necessarily amounting to probable cause, to suspect that the luggage may contain contraband.

*Beale II*, 731 F.2d at 595–96 (emphasis in original).

The majority, however, has chosen the illogical approach. It has not explored whether the canine investigation, if not a "search" requiring probable cause, is nonetheless a lesser "intrusion" or "invasion" subject to some modicum of Fourth Amendment protection.

The majority's all-or-nothing approach to awarding Fourth Amendment protection suffers from three defects. First, it completely removes the judiciary's responsibility for supervising limited invasions of Fourth Amendment rights. *See, e.g., Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (discussing importance of a neutral authority passing on reasonableness of search warrants). The police need no longer justify to a neutral magistrate their plans to use trained dogs—either before the sniff at a probable cause hearing, or afterward during a suppression hearing. The authorities are free, on the basis of hunches and guesses, to employ dogs to sniff personal luggage for the purpose of detecting contraband.

Second, the majority overlooks circumstances in the Supreme Court's key decisions indicating that the intermediate *Terry* approach is appropriate in dog sniff cases. *Place,* for example, did not hold that the Government did not need to provide *any* basis for conducting the sniff. Instead, *Place* held that the authorities could briefly detain luggage based on an articulable suspicion that the owner was a drug courier. *See* 103 S.Ct. at 2644. This inquiry preceeded any discussion about whether the authorities could then employ a canine sniff. *Id.* Relying on these facts, Judge Ely simply held the Government to the modest burden of articulating a reasonable suspicion. He correctly reasoned that such suspicion is present when the suitcase owner fits the drug courier profile that narcot-

ics agents commonly use to identify drug smugglers. In so doing, Judge Ely recognized both the Government's *Terry* -type need to conduct flexible, on-the-spot investigations, and society's interest in avoiding random and capricious intrusions into travelers' luggage and personal effects.

Third, the majority all too readily forfeits what little Fourth Amendment protection might still obtain in this developing area of police work. The reasonable suspicion standard is already easy to meet. If courts fail to hold the authorities to even this low threshold of reasonableness, then the Fourth Amendment will no longer offer the protection against arbitrary authority that the Framers insisted on.

Justice Douglas worried about the "powerful hydraulic pressures" that bear on courts to water down constitutional guarantees. *Terry v. Ohio*, 392 U.S. 1, 39, 88 S.Ct. 1868, 1889, 20 L.Ed.2d 889 (1968) (Douglas, J., dissenting). I fear that with today's decision, the majority has ventured beyond watering down Fourth Amendment protections. Instead, in a new category of cases, it has defined them out of existence.