983 So.2d 672 (2008)
Andre LINDO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1126.
District Court of Appeal of Florida, Fourth District.
June 4, 2008.
*673 Carey Haughwout, Public Defender, and Tom Odom, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence for trafficking in marijuana greater than 25 but less than 2,000 pounds. He argues the trial court erred in denying his motion to suppress evidence because law enforcement lacked reasonable suspicion to detain packages at a United Parcel Service [UPS] facility to allow a drug dog to sniff the packages. We disagree and affirm.
In December 2005 an Orlando deputy contacted a local U.S. Border Patrol Agent concerning two packages alleged to contain narcotics that had been shipped to South Florida. The deputy provided the tracking numbers, the origin and destination, and the names of the sender and recipient. The agent did not know but assumed the source of the information was a confidential informant. The agent then conveyed the information to a fellow agent who was a canine-handler.
*674 Early the next morning, the canine-handler and another agent went to the UPS facility, met with the security manager, and with the tracking numbers provided by the Orlando deputy retrieved the packages from a delivery truck parked at the loading dock. They set the packages out in a line-up with others and deployed the canine. The dog alerted to the two suspect packages.
The agent contacted a detective of the Miramar/South Broward Task Force, who accepted the packages for a warrant-controlled delivery. Two Miramar detectives obtained a search warrant. They then opened the cardboard boxes and found a plastic bin inside each one containing a bale of marijuana wrapped in plastic. The detectives took a sample of the marijuana, tested it, and repacked the boxes. The detectives obtained a search warrant for the residence, which authorized them to attempt delivery and once the packages were delivered to someone in the house, enter the residence.
The detectives executed the warrant the next day. The task force set up surveillance and observed two men, one of whom was the defendant, exit the house and leave the premises in separate cars. The two men later returned, but left again in separate cars. One of the detectives, dressed as a UPS delivery person, delivered the packages to the front porch of the house.
The defendant returned to the house, parked in the driveway, and took the packages inside. After a while the defendant left the house, drove around the neighborhood, and returned. When the defendant exited the house again, the detectives followed him in a marked car and executed a traffic stop because they were unsure whether he had placed the packages in the car.
Law enforcement used the defendant's house key to gain entrance into the residence. They found the opened packages in the middle of a bedroom floor with the marijuana exposed. The packages were identified as the same as those retrieved from UPS and delivered to the house.
The detective read the defendant the entire warrant and Miranda[1] warnings from a prepared card. The defendant agreed to talk to the detective and told her that he was being paid to accept the packages for another person, whose last name he did not know. The packages were to have arrived the day before, but when they did not come on time, he thought they might have been intercepted.
The State charged the defendant with one count of trafficking in cannabis in an amount in excess of 25 but less than 2,000 pounds. The defendant moved to suppress the evidence. At the suppression hearing, the defendant argued that the State lacked probable cause to seize the packages from UPS because there was no veracity attached to the anonymous tip in Orlando. The State responded that the source of the original tip was irrelevant because law enforcement could have done a random dog sniff at the UPS facility without the tip. Further, the State argued that a brief detention of a container for a dog sniff does not constitute a search and seizure.
The trial court denied the motion to suppress. It found the temporary detention of the packages prior to the dog sniff did not constitute a seizure. The State agreed the disposition of the motion was dispositive. The defendant pled no contest, reserving his right to appeal.
*675 On appeal, the defendant argues the trial court erred when it denied his motion to suppress the packages because they were seized in violation of his rights under the federal and state constitutions. See Amend. IV, U.S. Const.; Art. I, § 12, Fla. Const. He argues the information received from Orlando was insufficient to support the necessary reasonable suspicion under United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to warrant the detention of the packages because it did not satisfy the rule for anonymous tips articulated in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
The State responds primarily that law enforcement did not need reasonable suspicion to conduct the dog sniff at the UPS facility because it was not a search and seizure of the packages.
Motions to suppress present mixed questions of law and fact, and generally come clothed with a presumption of correctness. Connor v. State, 803 So.2d 598, 605 (Fla.2001) (quoting Murray v. State, 692 So.2d 157, 159 (Fla.1997)). Facts supported by competent, substantial evidence are accepted as true, but we review legal issues de novo. Id.
The first Clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." This text protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.
United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (footnotes omitted).
Here, the defendant argues that law enforcement's detention of the packages to allow for the dog sniff violated his Fourth Amendment rights. We disagree.
In United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court addressed Fourth Amendment implications when luggage was detained at an airport for the purpose of conducting a dog sniff:
The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. The seizure may be made after the owner has relinquished control of the property to a third party or . . . from the immediate custody and control of the owner. Moreover, the police may confine their investigation to an on-the-spot inquiry  for example, immediate exposure of the [personal effect] to a trained narcotics dog  or transport the property to another location. Given the fact that seizures of property can vary in intrusiveness, some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime.
Id. at 705-06, 103 S.Ct. 2637 (footnotes omitted). A "canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." Id. at 707, 103 S.Ct. 2637. It was for this reason that the Court in Place held that a dog *676 sniff of luggage in a public place did not constitute a search.
In a forfeiture case, Daniels v. Cochran, 654 So.2d 609 (Fla. 4th DCA 1995), our court encountered similar facts. There, a detective opened a package without a warrant while conducting a routine package check at a Federal Express facility using two drug-sniffing dogs. While this court observed that the dog sniff did not constitute a search, it did not comment on the practice of routinely subjecting Federal Express packages to dog sniffs without reasonable suspicion. Thus, while the Supreme Court and this court have found that a dog sniff does not constitute a search, neither court has addressed the question of whether the detention of packages to conduct the dog sniff is a seizure.
To answer this latter question guidance can be taken from United States v. Beale, 736 F.2d 1289 (9th Cir.1984). There, detectives observed the defendant and another man check luggage at the airport, but then saw them separate and obtain their seating assignments individually. The detectives conducted a dog sniff of the luggage in the baggage area. The dog alerted to the defendant's suitcase. When the defendant reached his destination, another dog sniff was conducted with the same result.
The defendant moved to suppress the evidence and argued that the dog sniff was illegal. After appeals and remands, the Ninth Circuit held that the investigative method employed by law enforcement in momentarily detaining the luggage to conduct the dog sniff was not so intrusive as to "interfere, in any meaningful way," with the defendant's possessory interest in his luggage. Id. at 1292; see also United States v. Lovell, 849 F.2d 910 (5th Cir. 1988).
In United States v. LaFrance, 879 F.2d 1, 5 (1st Cir.1989), the First Circuit made an important distinction between luggage detention and package detention cases. The detention of luggage implicates both possessory and liberty interests because it affects a person's travel itinerary while the detention of a shipped package implicates only a possessory interest. Id. at 5-6 (citing Place, 462 U.S. at 708, 103 S.Ct. 2637). In analyzing the impact on a possessory interest, the query becomes whether the length of the detention was so unreasonable as to constitute a seizure within the meaning of the Fourth Amendment. If so, then reasonable suspicion is required to justify the unreasonable interference. If not, then reasonable suspicion is not required. "[R]easonableness remains the focus of judicial inquiry" even though what is reasonable will vary by situation. Id.
Applying the rationales from Beale and LaFrance to this case, we hold that the temporary detention of the two packages at the UPS facility was not so unreasonable as to "interfere, in any meaningful way" with the defendant's packages. Therefore, the temporary detention was not a seizure within the meaning of the Fourth Amendment. Because there was no seizure, there was no need for the State to establish reasonable suspicion. Considering that the dog sniff was also not a search, the defendant's Fourth Amendment rights in this case were not implicated. The trial court properly denied the defendant's motion to suppress.
For these reasons, we affirm the denial of the motion to suppress and the defendant's conviction and sentence.
Affirmed.
POLEN and GROSS, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).