192 F.3d 1260 (9th Cir. 1999)
 B.C., suing through his legal guardian Cinthia Ann Powers, CINTHIA ANN POWERS, suing on behalf of B.C., Plaintiffs-Appellants,
v.
PLUMAS UNIFIED SCHOOL DISTRICT, Defendant, and PLUMAS COUNTY SHERIFF'S DEPARTMENT; JOSEPH HAGWOOD, in his individual capacity and his official capacity as Superintendent of Plumas Unified School District; RICHARD SPEARS, in his individual capacity and in his official capacity as Principal of Quincy High School; ARTURO BARRERA, in his individual capacity and his official capacity as Vice Principal of Quincy High School; ROD DECRONA, in his individual capacity and his official capacity as Plumas County Assistant Sheriff; DEAN CANALIA, Assistant Sheriff; STEVEN HITCH, Detective, Defendants-Appellees.
 No. 97-17287
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 8, 1998--San Francisco, California
Decided September 20, 1999
Amended October 21, 1999
 
 [Copyrighted Material Omitted]
 J. David Nick and Kenneth N. Frucht, San Francisco, California, for the plaintiff-appellant.
 Franklin G. Gumpert and Valentina Reiner, Barkett, Gumpert & Reiner,
 Sacramento, California for defendants-appellees Sheriff's Department and Officers.
 Laurence L. Angelo and May H. Ruggles, Angelo, Kilday & Kilduff, Sacramento, California for defendants-appellees School Officials.
 Appeal from the United States District Court for the Eastern District of California; Lawrence K. Karlton, Chief District Judge Emeritus, Presiding. D.C. No. CV-96-01130-LKK
 Before:Harry Pregerson and Melvin Brunetti, Circuit Judges, and Ann L. Aiken,[1] District Judge.
 Opinion by Judge PREGERSON; Concurrence by Judge BRUNETTI.
 PREGERSON, Circuit Judge:
 
 
 1
 This case involves a dog sniff of students at Quincy High School in Plumas County, California. Plaintiff B.C., a Quincy High School student, brought this action pursuant to 42 U.S.C. S 1983 and alleged several deprivations of his Fourth Amendment right to be free from unreasonable searches and seizures and various state law claims.[2] B.C. named as defendants the Plumas Unified School District, Superintendent Joseph Hagwood, Principal Richard Spears, Vice Principal Arturo Barrera, Assistant Sheriff Rod Decrona, Deputy Sheriff Dean Canalia, and DetectiveSteven Hitch.[3] B.C. sought injunctive relief, money damages, and certification of a plaintiff class.
 
 
 2
 Plaintiff and defendants filed cross motions for summary judgment. The district court denied plaintiff's motion for a preliminary injunction, plaintiff's motion for class certification, and plaintiff's motion for summary judgment. The court granted defendants' motions for summary judgment and ruled that all defendants were entitled to immunity from money damages. Finally, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff appeals. We affirm. I.
 
 
 3
 The material facts are not disputed. B.C. was a student at Quincy High School in Plumas County, California, in May 1996. On May 21, 1996, Principal Spears and Vice Principal Barrera told plaintiff and his classmates to exit their classroom. As they exited, the students passed Deputy Sheriff Canalia and "Keesha," a drug-sniffing dog, stationed outside the classroom door. Keesha alerted to a student other than plaintiff.
 
 
 4
 The students were told to wait outside the classroom while the dog sniffed backpacks, jackets, and other belongings which the students left in the room. When the students were allowed to return to their classroom, they again walked past Deputy Canalia and the dog. Keesha again alerted to the same student. That student was taken away and searched by school officials. No drugs were found that day at Quincy High School.
 
 II.
 
 5
 We have jurisdiction to review the district court's denial of plaintiff's motion for a preliminary injunction under 28 U.S.C. S 1292(a)(1). We have jurisdiction to review the district court's grant of summary judgment in favor of defendants under 28 U.S.C. S 1291. We also have jurisdiction to review the district court's denial of plaintiff's motion for class certification and cross motion for summary judgment under the same statute. See Hanon v. Data products Corp., 976 F.2d 497, 500 (9th Cir. 1992) (court of appeals has jurisdiction to review denial of plaintiff's motion for class certification when reviewing grant of defendant's motion for summary judgment); Abend v. MCA, Inc., 863 F.2d 1465, 1482 n.20 (9th Cir. 1988) (on cross motions for summary judgment,"the district court's grant of summary judgment [for defendant is] a final decision giving us jurisdiction [underS 1291] to review its denial of plaintiff's motion for summary judgment").[4]
 
 III.
 
 6
 B.C. sought a preliminary injunction on his own behalf, and on behalf of a class of plaintiffs.[5] The district court dismissed this claim as moot. We affirm, however, on the alternate ground that B.C. and the class he seeks to represent lack standing to seek injunctive relief. See United States v. Washington, 969 F.2d 752, 755 (9th Cir. 1992) (court of appeals may affirm on any ground supported in the record).
 
 
 7
 The standing issue was not raised in the district court. Nor was it raised by the parties before this court. But federal courts are required sua sponte to examine jurisdictional issues such as standing. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (lack of standing raised by the court when not raised by either party).
 
 
 8
 To have standing to seek injunctive relief, B.C. must demonstrate a real or immediate threat that defendants will again subject him to an illegal dog sniff of his person. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-10 (1983); O'Neal v. City of Seattle, 66 F.3d 1064, 1066 (9th Cir. 1995); see also Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1308-09 (9th Cir. 1992) (holding that plaintiffs failed to allege sufficient facts to confer standing for purposes of injunctive relief because complaint did not allege that the named plaintiffs "would suffer the same purported injury in the future"). B.C. cannot make this showing because he no longer is a student at Quincy High School or at any other school in the Plumas Unified School District; he has not been a student at Quincy since mid-1996; and he has no plans to return to school anywhere in the district. Because B.C. has no standing to seek injunctive relief, we affirm the district court's dismissal of his claim.
 
 
 9
 We also affirm the district court's dismissal of B.C.'s class claims for injunctive relief. A class of plaintiffs does not have standing to sue if the named plaintiff does not have standing. See Cornett v. Donovan, 51 F.3d 894, 897 n.2 (9th Cir. 1995).
 
 IV.
 
 10
 Plaintiff B.C. also seeks money damages against all defendants in their official capacities. He claims that defendants conducted an unreasonable search of his person.
 
 A.
 
 11
 The district court granted summary judgment in favor of the school officials in their official capacities on B.C.'s individual claims for money damages. The district court held that B.C.'s claims for money damages against Superintendent Joseph Hagwood in his official capacity were barred by the Eleventh Amendment. The district court construed B.C.'s claims against Principal Spears and Vice Principal Barrera as claims against Quincy High School as an entity and dismissed those claims on the ground that a high school is not an entity capable of being sued under S 1983. B.C. has not appealed these rulings, and we do not address them here.
 
 B.
 
 12
 The district court also granted summary judgment for the Sheriff's Department officials in their official capacities on the ground that B.C. failed to demonstrate a direct causal link between an official policy or custom of the Sheriff's Department and the alleged deprivation of B.C.'s constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Department of Social Servs. , 436 U.S. 658, 694 (1978). We review de novo, see Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998), and we affirm.
 
 
 13
 In reviewing the district court's grant of summary judgment, we must view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See id. (citing Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995)). In support of their motion for summary judgment, the Sheriff's Department defendants presented evidence that departmental policy only permits the use of drug-sniffing dogs on objects and not on persons. Inopposing the Department's motion, B.C. presented no credible evidence to refute that this is in fact the Department's policy.
 
 
 14
 B.C. also attempted to satisfy the causation requirement by contending that the Sheriff's Department failed to train its officers in the proper use of drug-sniffing dogs, and that such failure amounts to a custom and policy of deliberate indifference toward his constitutional rights. The district court properly granted summary judgment for the Sheriff's Department officials in their official capacities after those defendants produced uncontroverted evidence that officers are trained in the use of dogs, and that they are trained to use dogs to sniff property, not people.
 
 V.
 
 15
 B.C. also sought money damages against all defendants in their individual capacities. Defendants moved for summary judgment on the grounds that: (1) their actions did not constitute a "search" within the meaning of the Fourth Amendment; (2) even if they performed a search, it was reasonable; and (3) even if they performed an unreasonable search, they were entitled to qualified immunity from liability. The district court determined that the dog sniff at issue here constituted an unreasonable search.[6] But the court also determined that defendants were entitled to qualified immunity because the parameters of permissible dog sniff searches were not "clearly established" at the time of the search at issue. Accordingly, the court granted summary judgment for defendants on qualified immunity grounds. We review de novo "[a ] district court's decision of qualified immunity in a 42 U.S.C. S 1983 action," Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir.), cert. denied, 119 S. Ct. 540 (1998) (citing Elder v. Holloway, 510 U.S. 510, 516 (1994)), and we affirm.
 
 
 16
 When a government official asserts a defense of qualified immunity, the court must first determine whether the plaintiff has alleged facts which, if true, would constitute a deprivation of a constitutional right at all. See Wilson v. Layne, 119 S. Ct. 1692, 1697 (1999); County of Sacramento v. Lewis , 118 S. Ct. 1708, 1714 n.5 (1998). Only then should the court determine whether "the right allegedly implicated was clearly established at the time of the events in question." County of Sacramento, 118 S. Ct. at 1714 n.5 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Accordingly, we analyze whether B.C. has alleged facts which, if true, would constitute a deprivation of his Fourth Amendment right to be free from unreasonable searches and seizures before we proceed to the issue whether the defendants are entitled to a qualified immunity defense.
 
 A.
 
 17
 "A `search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Supreme Court has held that the use of a trained canine to sniff unattended luggage is not a search within the meaning of the Fourth Amendment. See United States v. Place, 462 U.S. 696, 707 (1983). But neitherthe Supreme Court nor the Ninth Circuit has addressed the issue whether a dog sniff of a person is a search. The Ninth Circuit has recognized, however, that the level of intrusiveness is greater when the dog is permitted to sniff a person than when a dog sniffs unattended luggage. See United States v. Beale, 736 F.2d 1289, 1291-92 (9th Cir. 1984) (en banc) ("Here, we are not confronted with a case in which the detection dog conducted a sniff of a person rather than an inanimate object, or a sniff of luggage that a person was carrying at the time. The investigative technique applied to Beale's luggage caused `virtually no annoyance and rarely even contact with the owner of the bags, unless [the test result] is positive.' ") (quoting United States v. Waltzer, 682 F.2d 370, 373 (2nd Cir. 1982). The court in Beale noted that under Place and Jacobsen, the level of intrusiveness of an investigative technique is critical to whether the actions of government officials constitute a search. See id.
 
 
 18
 Only the Fifth and Seventh Circuits have directly addressed the question whether a dog sniff of a student's person is a search. Those courts have taken opposite positions on the issue. In Beale, we cited with approval the Fifth Circuit's decision in Horton v. Goose Creek Independent School District, 690 F.2d 470, 479 (5th Cir. 1982). See 736 F.2d 1291 n.1.[7]
 
 
 19
 Horton involved a school's use of trained Doberman Pinschers and German Shepherds to sniff students' lockers and automobiles. On a random and unannounced basis, the dogs were also taken into classrooms to sniff the students. In Horton, the Fifth Circuit noted that " `the intensive smelling of people, even if done by dogs, [is] indecent and demeaning' " and held that the sniffing by dogs of students was a search. 690 F.2d at 478-79 (quotation omitted).[8]
 
 
 20
 The Fifth Circuit in Horton considered and expressly rejected the approach taken by the Seventh Circuit in Doe v. Renfrow, 631 F.2d 91, 92 (7th Cir. 1981) (per curiam). Renfrow involved facts nearly identical to those of Horton. But the court in Renfrow upheld the district court's ruling that a dog sniff of students is not a search. See id.[9]
 
 
 21
 We agree with the Fifth Circuit that "close proximity sniffing of the person is offensive whether the sniffer be canine or human." Horton, 690 F.2d at 479. Because we believe that the dog sniff at issue in this case infringed B.C.'s reasonable expectation of privacy, we hold that it constitutes a search. See Jacobsen, 466 U.S. at 113.
 
 
 22
 Having determined that a search occurred, we must determinewhether the search was constitutional. The constitutionality of a search is measured by its reasonableness in the circumstances. See Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is `reasonableness.' ") (quotation omitted); New Jersey v. T.L.O., 469 U.S. 325, 341 (1985) ("reasonableness, under all of the circumstances, " is the test for the legality of a search conducted by school officials). "To be reasonable under the Fourth Amendment, a search must ordinarily be based on individualized suspicion of wrongdoing." Chandler v. Miller, 520 U.S. 305, 313 (1997) (citing Vernonia, 515 U.S. at 652-53). School officials here admit that they had no "individualized suspicion of wrongdoing" by any student.
 
 
 23
 Despite this lack of any individualized suspicion, a suspicionless search may be reasonable " `[i]n limited circumstances, where [1] the privacy interests implicated by the search are minimal, and [2] where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion.' " Id. at 314 (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 624 (1989) (upholding suspicionless urinalysis of railroad employees based on documented link between drugs and alcohol and train accidents) (emphasis added)); see also Vernonia, 515 U.S. at 652-53, 663 (upholding suspicionless urinalysis drug testing of student athletes based on school's "immediate [drug] crisis"; but "caution[ing] against the assumption that suspicionless drug testing [would ] readily pass constitutional muster in other contexts") (emphasis added). Moreover, the second part of the test requires both the existence of an " `important governmental interest furthered by the intrusion' " and that this interest would be " `placed in jeopardy by a requirement of individualized suspicion.' " Chandler, 520 U.S. at 314 (quotations omitted).
 
 
 24
 Applying this test, we first evaluate the Quincy High School students' privacy interests. It is well-settled that students do not "shed their constitutional rights . . . at the schoool house gate." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 50, 506 (1969). While students have " `a lesser expectation of privacy than members of the population generally' " Vernonia, 515 U.S. at 657 (quoting T.L.O., 469 U.S. at 348 (Powell, J., concurring)), they nonetheless retain an expectation of privacy when they enter the school grounds. See T.L.O., 469 U.S. at 339 (holding that schoolchildren have a legitimate expectation of privacy in noncontraband items that they carry to school).[10] Moreover, the district court found that the dog sniff was "highly intrusive" for the following reasons. First,"the body and its odors are highly personal." Noting that dogs" `often engender irrational fear' " (quoting Horton, 690 F.2d at 483), the district court further explained that the fact "[t]hat search was sudden and unannounced add[ed] to its potentially distressing, and thus invasive, character." In addition, the "search was completely involuntary." Thus, we conclude that theQuincy High School students' privacy interests were not minimal.
 
 
 25
 Having considered the students' privacy interests, we turn to the government's interest in conducting such a search. There can be no dispute that deterring drug use by students is an important--if not a compelling--governmental interest. See Vernonia, 515 U.S. at 661. But the record here does not disclose that there was any drug crisis or even a drug problem at Quincy High in May 1996.[11]Cf. id. at 662-65 (suspicionless search held reasonable because school was suffering an immediate drug crisis). In the absence of a drug problem or crisis at Quincy High, the government's important interest in deterring student drug use would not have been " `placed in jeopardy by a requirement of individualized suspicion.' " Chandler, 520 U.S. at 314 (quoting Skinner , 489 U.S. at 624). We therefore conclude that the random and suspicionless dog sniff search of B.C. was unreasonable in the circumstances. See id. (quotation omitted); see also T.L.O. , 469 U.S. at 341 ("reasonableness, under all of the circumstances, " is the test for the legality of a search conducted by school officials).
 
 B.
 
 26
 Having determined that B.C. has alleged facts which, if true, would constitute an unreasonable search in violation of his Fourth Amendment right, we proceed to determine whether defendants are entitled to a qualified immunity defense. "Government officials are given qualified immunity from civil liability under S 1983 `insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Jensen, 145 F.3d at 1085 (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818 (1982)).
 
 
 27
 A right is "clearly established" if "the contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987)."To show that the right in question here was clearly established, [plaintiff] need not establish that [defendants' ] `behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law.' " Jensen, 145 F.3d at 1085 (quoting Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997)). "If the only reasonable conclusion from binding authority [was] that the disputed right existed, even if no case had specifically so declared, [defendants] would be on notice of the right and [they] would not be qualifiedly immune if they acted to offend it." Blueford , 108 F.3d at 255.
 
 
 28
 When the dog sniff in this case occurred, it was not clearly established that the use of dogs to sniff students in a school setting constituted a search. As such, the unlawfulness of defendants' conduct "in light of preexisting law," was not "apparent." Jensen, 145 F.3d at 1085-86 (citing Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir. 1997), cert denied sub nom. Smith v. Harris, 118 S. Ct. 1051 (1998)). Therefore, each of defendants could "have believed that[his] conduct was lawful." Id. at 1086. Accordingly, we conclude that all defendants in their individual capacities are entitled to qualified immunity from B.C.'s claims for money damages.
 
 VI.
 
 29
 The district court dismissed B.C.'s claim that defendants subjected him to an unreasonable seizure of his person while the dog sniffed the classroom.[12] The relevant facts are again undisputed. The teachers at Quincy received a note from Vice Principal Barrera informing them that a drug-sniffing dog would be on campus, and instructing them to "try and keep students in their classes." B.C. asked his teacher whether he could leave the room, and his teacher told him that she had been instructed not to allow students to leave the classroom. After exiting the classroom, students were directed to stand beneath a covered snack bar forty feet from the classroom. Vice Principal Barrera did not allow B.C. to leave the area when B.C. sought to do so.
 
 
 30
 We have said that "a student is required to be on school premises, subject to the direction of school authorities, during the course of the schoolday." Smith v. McGlothlin, 119 F.3d 786, 788 (9th Cir. 1997). In the circumstances of this case, we conclude that directing students to a covered snack bar area for five to ten minutes during an unquestionably legitimate dog sniff of the students' classroom is not a seizure within the meaning of the Fourth Amendment. "[A ] degree of supervision and control that could not be exercised over free adults" is permissible in the school context. Vernonia, 515 U.S. at 655-56. The district court properly denied B.C.'s motion for summary judgment on the issue whether he suffered a seizure of his person.
 
 
 31
 The district court also ruled that B.C. suffered no seizure of his property during the search of the classroom. We agree. B.C. admits that he left none of his belongings in the room. Accordingly, there was no seizure of his property.
 
 VII.
 
 32
 We affirm the district court's dismissal of B.C.'s individual and class claims for injunctive relief for lack of standing; affirm the district court's grant of summary judgment in favor of the school officials based on the Eleventh Amendment; affirm the district court's grant of summary judgment in favor of the Sheriff's Department officials on the ground that B.C. has demonstrated no unconstitutional custom or policy; affirm the district court's grant of summary judgment in favor of all individual defendants on the search issue on the basis of qualified immunity; and affirm the district court's grant of summary judgment in favor of all individual defendants on the seizure issues on the ground that B.C. suffered no unreasonable seizure of his person or his property.
 
 
 33
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Ann L. Aiken, United States District Judge for the District of Oregon, sitting by designation.
 
 
 [2]
 Plaintiff also asserted a civil rights claim under California law, and claims for false imprisonment and spoliation of evidence.
 
 
 [3]
 Plaintiff sued each person in both their individual and official capacities.
 
 
 [4]
 We need not review the district court's denial of plaintiff's cross
 motion for summary judgment because we affirm the district court's grant of summary judgment for all defendants on all claims. For the same reason, we need not review the question whether the district court erroneously denied B.C.'s motion for class certification.
 B.C. states that his claims and the claims of the putative class "are the same." See Fed. R. Civ. P. 23 (a)(3) (requiring that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class"). As such, the success of the class claims for money damages depends on the success of B.C.'s individual claims.
 
 
 [5]
 B.C. sought to enjoin the school and sheriff's department officials "from conducting arbitrary and non-particularized`sniff-searches' of him and any other student in the Plumas Unified School District."
 
 
 [6]
 The district court considered the parties' cross motions for summary judgment and concluded that "plaintiff's expectation of bodily privacy was reasonable and that its invasion through the device of a dog's sniffing constituted a search." In support of this ruling, the district court stated that "[i]t seems obvious that the degree of intrusion which occurs from having one's body subjected to examination by a dog is far greater than that which occurs upon the sniffing of unattended belongings," and that "having one's body examined in this manner is sufficiently `embarrassing' that it can be distinguished from the circumstance in [United States v. Place, 462 U.S. 696 (1983),] where unattended luggage was sniffed."
 
 
 [7]
 The concurring opinion states that Beale does not cite Horton with approval. We disagree. We believe that a fair reading of Beale indicates that our court looked favorably on Horton when we cited that case for its holding that the use of dogs to sniff students was a search and when we cited other authorities that support the Fifth Circuit's holding. See Beale, 736 F.2d at 1291 n.1. After citing Horton in Beale, we referred to a Michigan Law Review article for the proposition that "the very act of being subjected to a body sniff by a German Shepherd may be offensive at best and harrowing at worst to the innocent sniffee." Id. Finally, we cited Justice Brennan's dissent from the Supreme Court's failure to grant certiorari in Doe v. Renfrow, 631 F.2d 91 (7th Cir. 1981) (per curiam). We cited Justice Brennan's dissent for his recognition "that cases allowing dog sniffs `involved the sniffing of inanimate and unattended objects.' " Beale, 736 F.2d at 1291 n.2 (quoting Doe v. Renfrow , 451 U.S. at 1026 n.4 (Brennan, J., dissenting from denial of certiorari)).
 
 
 [8]
 The concurring opinion believes that Horton is inapposite because the dog in Horton put its nose "up against " one or more of the students. See Horton, 690 F.2d at 479. But "the reach of the Fourth Amendment cannot turn on the presence or absence of a physical intrusion." Katz v. United States, 389 U.S. 347, 353 (1967).
 
 
 [9]
 Four of the Seventh Circuit's then eight judges wrote separate dissents from the court's failure to rehear the case en banc. See 631 F.2d at 93-95 (Fairchild, C.J., and Swygert, Wood, and Cudahy, JJ., dissenting from denial of rehearing en banc).
 
 
 [10]
 We note that Vernonia involved the mandatory drug testing of extracurricular athletes. The Court explained that "[l]egitimate privacy expectations are even less with regard to student athletes " for two reasons. 515 U.S. at 657. First, participation in extracurricular athletics requires changing and showering in locker rooms which "are not notable for the privacy they afford." Id. Second, "students who voluntarily participate in school athletics have reason to expect intrusions upon normal rights and privileges, including privacy." Id. In contrast, the search in this case took place in a classroom where students were engaged in compulsory, educational activities.
 
 
 [11]
 The district court, in assessing the "drug problem" at Quincy High, observed that "there [was] little evidence of a crisis, and no indication that a suspicion-based regime [had] proven ineffectual." These facts are in sharp contrast to those of Vernonia, where drug use at the school had sharply increased, and where students were "speak[ing] out about their attraction to the drug culture, and . . . boast[ing] that there was nothing that the school could do about it." 515 U.S. at 648.
 
 
 [12]
 B.C. does not contend that the dog sniff of the inside of the unoccupied classroom was a search.
 
 
 BRUNETTI, Circuit Judge, concurring in part:
 
 34
 I concur in parts I, II, III, IV, and VI of the majority's opinion, and while I agree with the result reached by the majority in Part V, I write separately because the majority's conclusion that an unreasonable search occurred in this case under the Fourth Amendment is not supported by Supreme Court or circuit court precedent.
 
 
 35
 The majority correctly states that "[a] search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed," yet the majority fails to identify the reasonable expectation of privacy that was infringed when the plaintiff walked past the drug dog. The interaction between the students and the dog in this case did not implicate a legitimate expectation of privacy protected by the Fourth Amendment and did not, therefore, constitute a Fourth Amendment search because the dog could have only detected the presence or absence of contrabandif the dog could have detected anything at all. See United States v. Jacobsen, 466 U.S. 109, 123 (1984); United States v. Lingenfelter, 997 F.2d 632, 637-38 (9th Cir. 1993); United States v. Beale, 766 F.2d 1289 (9th Cir. 1984) (en banc); see also United States v. Sarda-Villa, 760 F.2d 1232, 1236-37 (11th Cir. 1985) (hope that something will not be discovered is not a reasonable expectation of privacy). The majority has failed to address the expectation of privacy issue in order to reach and resolve the constitutional issue of whether an unreasonable search occurred in this case under the Fourth Amendment when the students walked past the narcotics dog.
 
 
 36
 The majority has also failed to discuss the most relevant Supreme Court and Ninth Circuit cases that address drug dogs and the Fourth Amendment. The Supreme Court has held that subjecting luggage in a public place to a sniff test by a trained narcotics dog is not a search under the Fourth Amendment, see United States v. Place, 461 U.S. 696, 707 (1983), and that a test which merely discloses the fact that a substance is a controlled substance does not affect a legitimate privacy interest implicating the Fourth Amendment. See United States v. Jacobsen, 466 U.S. 109, 123 (1984). After the Supreme Court's decisions in Place and Jacobsen , this Court concluded that a dog sniff is not a search under the Fourth Amendment if: "(1) it discloses only the presence or absence of a contraband item, and (2) its use `ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.' " United States v. Beale, 736 F.2d 1289, 1291 (9 th2 Cir. 1984) (en banc) (emphasis in original) (quoting Place, 461 U.S. at 707). Although the majority claims that Beale supports its conclusion that a search occurred in this case, the majority neither mentions the Beale test nor attempts to demonstrate why, under the Beale test, a Fourth Amendment search occurred in this case. The majority also fails to acknowledge that, in Beale, this Court concluded that the dog sniff at issue in that case did not constitute a Fourth Amendment search.
 
 
 37
 The majority also misreads the Beale opinion when it asserts that this Court cited to the Fifth Circuit's decision in Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 479 (5th 2 Cir. 1982), with approval and recognized that the intrusiveness of dog sniffs are greater when the dog is permitted to sniff an individual. This Court did not cite to the Horton opinion with approval. In Beale, we noted that we were "not confronted with a case in which the detection dog conducted a sniff of a person rather than an inanimate object " and cited to Horton only as an example of a case where dogs sniffed people rather than inanimate objects. Beale 736 F.2d at 1291, 1291 n.1. More importantly, we never stated or implicitly recognized in Beale that the intrusiveness of dog sniffs are greater when a dog sniffs an individual rather than an inanimate object such as luggage.
 
 
 38
 The majority's heavy reliance on the Fifth Circuit's decision in Horton to support its conclusion that a search occurred in this case is misplaced because Horton is distinguishable. In Horton, the Fifth Circuit held that when a dog sniffs around each student, puts his nose on ("up against") the students, scratches at the students, and displays other signs of excitement, a search occurs under the Fourth Amendment. See Horton, 690 F.2d at 479. The dog in this case did not sniff around each student, touch the students in any manner, or display signs of excitement. The dog was always three to four feet from the students as they exited and re-entered the classroom. The Fifth Circuit in Horton even specifically declined to address "whether the use of dogs to sniff people in some other manner, e.g., at some distance, is a search. " Id. A full andaccurate reading of the Horton decision demonstrates that it does not support the majority's conclusion that the dog's presence in this case constituted a search under the Fourth Amendment. It is, therefore, inadequate for the majority to simply state: "We agree with the Fifth Circuit that `close proximity sniffing of the person is offensive whether the sniffer be canine or human.' "
 
 
 39
 The majority, in footnote 8, believes that I erroneously distinguish this case from Horton based on the single fact that the dog in this case did not touch the students. This case and Horton are distinguishable, however, because, as the majority itself states, "the level of intrusiveness of an investigative technique is critical to whether the actions of government officials constitute a search," and the investigative techniques employed in Horton were much more intrusive than the investigative techniques employed in this case. The majority continues its discussion in footnote 8 by quoting Katz v. United States as stating "the reach of the Fourth Amendment cannot turn on the presence or absence of a physical intrusion." Katz v. United States, 389 U.S. 347, 353 (1967). A full reading of Katz, however, reveals that the Court stated:
 
 
 40
 [O]nce it is recognized that the Fourth Amendment protects
 
 
 41
 people--and not simply "areas"--against unreason able searches and seizures, it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.
 
 
 42
 Katz, 389 U.S. at 353 (emphasis added). Thus, the language quoted by the majority addresses physical invasions of places, not physical invasions of people. Moreover, the Supreme Court has long recognized that the specific bodily invasion a person suffers is relevant to the issues of whether a Fourth Amendment search occurred or whether a Fourth Amendment search is reasonable. See Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 616-18 (1989); California v. Trombetta, 467 U.S. 479, 481 (1984); Terry v. Ohio, 392 U.S. 1, 9 (1968); Schermber v. California, 384 U.S. 757, 767-68 (1966). Accordingly, distinguishing this case from Horton based on differences in the bodily intrusions suffered by the students is not contrary to specific Supreme Court precedent or general Fourth Amendment jurisprudence.
 
 
 43
 The majority also fails to acknowledge that the one circuit court decision that is most closely related to this case concluded that a Fourth Amendment search did not occur. See Doe v. Renfrow, 631 F.2d 91 (7th Cir. 1980) (per curiam) (adopting the district court's opinion reported at 475 F. Supp. 1012). In Renfrow, a narcotics dog walked up and down the aisles of classrooms while the students remained at their desks. See Doe v. Renfrow, 475 F. Supp. 1012, 1016 (N.D. In. 1979). The court concluded "that the students did not have a justifiable expectation of privacy that would preclude a school administrator from sniffing the air around the desks with the aid of a trained drug detecting canine." Id. at 1022. The Renfrow analysis is correct and, therefore, a Fourth Amendment search did not occur in this case when the plaintiff passed in front of the drug dog at a distance of three to four feet and the dog never alerted or moved.
 
 
 44
 Finally, the majority states: "We agree with the Fifth Circuit that `close proximity sniffing of the person is offensive whether the sniffer be canine or human.' " Whether we or the public find government conduct offensive is irrelevant to Fourth Amendment analysis because Fourth Amendment analysis is not dependent upon whether government conduct is offensive. Instead, Fourth Amendment analysis depends on whether government conduct unreasonably invades a reasonable expectation of privacy. The majority has failed to conduct proper Fourth Amendmentanalysis and has concluded that a Fourth Amendment search occurred simply because it finds dog sniffs offensive. This analysis and conclusion can not be supported by a record which unequivocally demonstrates that the students were not sniffed by a drug dog and can not satisfy the analytical standards Fourth Amendment jurisprudence prescribes.
 
 
 45
 I also write separately because, assuming that a Fourth Amendment search occurred in this case, the majority has also failed to conduct the proper balancing test to determine whether the search in this case was unreasonable under the Fourth Amendment. "Whether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Vernonia School Dist. v. Acton, 515 U.S. 646, 652-53 (1995) (emphasis added) (quotations omitted). "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such [individualized] suspicion." Chandler v. Miller, U.S. , 117 S. Ct. 1295, 1301 (1997) (emphasis added). The majority concludes that the searches in this case were unreasonable because the school district's interest in deterring drug abuse would not be jeopardized by requiring individualized suspicion, basing its conclusion on the fact that the record does not disclose a "drug problem" or "crisis" at Quincy High School.
 
 
 46
 This analysis is problematic. The majority fails to explain how the school district's important--if not compelling-interest in keeping its schools and students free from drugs is not jeopardized if, as the majority concludes, the school district must wait until a known drug problem or crisis exists before the district can conduct preemptive and protective drug searches. Under the majority's reasoning, school districts must wait until they experience an actual drug epidemic before they can conduct preemptive searches for illegal drugs. The Fourth Amendment does not support such a rule