FALLON PAIUTE–SHOSHONE
TRIBE, Plaintiffs,

v.

CITY OF FALLON, Nevada; Ken Tedford, Mayor City of Fallon; City of Fallon Councilmembers, Willis Swan, Hank Cornu and John Tewell, Defendants.

No. CV–N–99–270–ECR–VPC.

United States District Court,
D. Nevada.

Aug. 23, 2001.

Treva Hearne, Charles Zeh, Zeh, Pol-aha, Spoo, Hearne & Picker, Reno, NV, (for Fallon Paiute–Shoshone Tribes, Merlin Dixon, Alvin Moyle), for plaintiff.

Michael Mackedon, City of Fallon, City Attorneys Office, Fallon, NV, (for Hank Cornu, Fallon City Council Members, City of Fallon, Willis Swan, Ken Tedford, John Tewell), Donald Lattin, Walther, Key, Maupin, Oats, Cox, Klaich & LeGoy, Reno, NV, (for City of Fallon), for defendant.

*ORDER*

EDWARD C. REED, Jr., District Judge.

Plaintiffs, Fallon Paiute–Shoshone Tribe ("Tribe"), have filed a motion seeking partial summary judgment (# 39) on their civil rights 42 U.S.C. § 1983, equal protection, substantive due process, Fifth Amendment taking, breach of contract, and anti-trust claims. The defendants, ("City"), have filed an opposition (# 49) and plaintiffs replied (#·53).

## Background

On June 5, 1997, the Fallon Paiute–Shoshone Tribe ("Tribe") acquired 36 acres of land for the sum of 1.3 million dollars. The property was transferred to and accepted by the United States of America in trust for the Tribe as part of its Reservation pursuant to section 103 of Public Law 101–618. The land is located within the City of Fallon ("City"). The City operates the only publicly-owned sewer treatment works in this area and also operates electric service facilities. The Tribe asked the City for connections to the City's utilities and submitted an application for sewer service to the property. The Tribe alleges that it is entitled to the services based on two sources. The first is an agreement executed between the City, the Indian Health Services, the Tribe, and its Housing authority. The second source is the Oats property, which the Tribe purchased. The Tribe claims that the Oats property contains an easement given to the City in exchange for 500 sewer connection credits which attached to the Oats property.

On April 13, 1999, the City rejected the Tribe's application for utility service and determined that it would not provide the Tribe with any other form of utility services until the land was taken out of trust. The plaintiffs filed suit alleging several causes of action, including violations of 42 U.S.C. § 1983, equal protection, due process, breach of covenants running with the land, and breach of contract.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light

most favorable to the nonmoving party, *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## II Analysis

### A. 42 U.S.C. § 1983

 The plaintiffs first argue that the City's denial of sewer, water and electricity to the 36 acres of land purchased by the Tribe violates the supremacy clause and the plaintiff's rights under 42 U.S.C. § 1983. The plaintiffs rely on *Chase v. McMasters,* 573 F.2d 1011, 1019 (8th Cir. 1978), to support their argument that the Tribe has been deprived of a statutory right.

In 1974, Chase and her husband purchased a parcel of land located within the city limits of the City of New Town. A year later, the Chases conveyed title to the lot to the United States in trust for Beluah Chase. The transfer was approved by the Department of the Interior, Bureau of Indian Affairs. Shortly after, the Chases applied to the city council for connection to city sewer and water lines which ran across the front of their lot. The city

council knew of the land's trust status and delayed action on the request until it could obtain legal advice as to whether the city was required to provide services to land held in trust. The Chases were then informed that New Town would not allow the hookup as long as the lot was in trust status. Beluah Chase filed suit.

The Eight Circuit Court of Appeals held that the denial of Chase's rights under 25 U.S.C. § 465 stated a claim under 42 U.S.C. § 1983. *Id.* at 1017. Section 1983 creates a cause of action for violation of rights conferred by the federal constitution and federal statutes. The court noted that while not every violation of a federal statute gave rise to a section 1983 action, the "unique legal relationship between the Federal Government and tribal Indians", did state a cause of action under section 1983. The court held that 25 U.S.C. § 465 authorized the Secretary of Interior to purchase land for an Indian and to hold title in trust. Newtown's actions in denying services to the land as long as it was in trust interfered with Chase's right under 25 U.S.C. § 465 and therefore, with the legal relationship between the federal government and a tribal Indian. The court concluded that "the federal forum is appropriate for a claim of state or local interference with a right conferred on tribal Indians by federal law." *Id.* at 1017.

Defendants argue that the City's denial of sewer services is not a denial of federal statutory rights under section 1983. Defendants distinguish *Chase* on several grounds. First, defendants argue that *Chase* involved the transfer of property to trust status under the Indian Reorganization Act of 1934 while this case concerns Public Law 101–618.

The fact that in the present case the transfer of property has occurred under Public Law 101–618 does not change the analysis. Both the IRA and Public Law 101–618 state that title to land acquired under its provisions shall be held in trust by the government. We have previously held in a related suit to this case that Public Law 101–618 authorizes the Tribe to purchase land and transfer title to the federal government to have the land held in trust.[1]

■ Section 1983 creates a cause of action for violations of rights conferred by federal civil rights laws, as well as violations of other statutory and federal constitutional rights. *Greenwood v. Peacock,* 384 U.S. 808, 829–30, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). While a section 1983 action does not exist for every violation of a federal statute, the Eight Circuit held in *Chase* that a clear violation based upon "the 'unique legal relationship between the Federal Government and tribal Indians' does state a cause of action." *Chase,* 573 F.2d at 1017 (quoting *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). The court reasoned that the federal government assumed a guardian-ward relationship with respect to tribal Indians and had a responsibility to fulfill its trust obligations by protecting trust property from state interference. Local action interfering with a federal right conferred upon the tribe also interfered with the relationship between the federal government and a tribe. *Id.*

■ Second, defendants argue that while the individual plaintiff in *Chase* is clearly a protected "citizen" within the meaning of the Civil Rights Act, it is questionable whether the Tribe is a "citizen." However, Ninth Circuit authority supports the proposition that Tribes are "other persons" entitled to sue under section 1983. *See Native Village of Venetie IRA Council v. State of Alaska,* 155 F.3d 1150, 1152 n. 1

---

**1.** *See Churchill County v. United States of* *America,* CV–N–00–075–ECR (RAM).

(9th Cir.1998) (citing *Chemehuevi Indian Tribe v. California State Board of Equalization,* 757 F.2d 1047, 1054–55 (9th Cir. 1985)).

Third, defendants contend that the Ninth Circuit case of *White Mountain Apache Tribe v. Williams,* 810 F.2d 844 (9th Cir.1985), stands for the proposition that preemption of state law under the supremacy clause will not support a section 1983 claim and that not all federal statutes secure rights within the meaning of section 1983.

■ It is true than not every violation of federal law will give rise to a section 1983 cause of action. However, we see no distinction between the case presently before us and the *Chase* case. Public Law 101–618 was designed to settle claims by the tribes against the government. The Secretary was required to accept the land into trust for the tribe once the requirements of section 103(A) were met. Therefore, the Tribe has a federal right to have its land held in trust and the City of Fallon's denial of sewer services interferes with the tribe's right to enjoy the beneficial use of land held in trust. The City's refusal to provide sewer services due to the trust status of the land interferes "with the operation of an important means of implementing a policy adopted by the federal government to meet its trust obligations to Indian Tribes." *Id.* at 1018.

■ Local executive or administrative officials are accorded a qualified, good faith immunity from liability in damages under 42 U.S.C. § 1983. We previously denied defendants' motion to dismiss the plaintiffs' complaint on immunity grounds. However, neither party addressed the issue of qualified immunity in the summary judgment motion. Qualified immunity is a defense to liability, therefore, it is the defendants who should have asserted the defense in opposition to the motion for summary judgment. The defendants failed to raise the issue so we do not address the issue. The plaintiffs' motion for summary judgment on their section 1983 claim is granted.

## B. Equal Protection Claim

■ Among the protections afforded by the Fourteenth Amendment is the guarantee that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Plaintiffs allege that defendants violated their equal protection of the laws when the defendants chose not to grant the Tribe the sewer hookups as long as the property was in trust. An equal protection claim requires a showing of intentional discrimination. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). To establish such intentional or purposeful discrimination, it is necessary that plaintiffs must allege that similarly situated persons have been treated differently. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

The City has offered neither caselaw or citation to the record to support its claim that it did not discriminate against the Tribe. The City's sole argument is that once the property went into trust, the property was no longer part of the City. Therefore, the City could not discriminate against the Tribe because the City did not have jurisdiction. We disagree.

The City's argument would have this court limit the equal protection claim on geographic boundaries. The real question for an equal protection claim is whether the City treated the Tribe differently from other similarly situated persons. The Tribe appeared before the City Council like any other person seeking City services

and subjected itself to the City's application process. The issue before us is whether the City treated the Tribe differently from other similarly situation persons when it denied the Tribe services.

The City Council denied the Tribe city services "unless the property is annexed into the City." (Ex. 38, Transcript of City Council Special Session, Apr. 13, 1999, P. 82) The City Council members denied services over their concern that the City would have no jurisdiction or control over the property to enforce City laws, in particular rules regarding zoning, the use of utilities, and building codes. The Tribe alleges that the City has not made such requirements from other similarly situated entities, such as Churchill County, the post office, or the University of Nevada.

The Tribe has brought forth evidence that supports their equal protection claim. For example, Mayor Tedford was questioned in his deposition about City Code 14.04.020, which indicates that the city shall have a lien on any lot or parcel of land for any charges by the owner for services provided. (Plaintiffs' Exhibits in Support of Motion for Partial Summary Judgment, Tedford Depo., Vol. IV, p. 379–80) The Mayor stated that the City has not really considered section 14.04.020 to be an issue when providing utilities to the county, the school district, or the post office but does consider it to be an issue when dealing with the tribe. (*Id.*) The Mayor could not explain why he considered the tribe to be different from these other entities. The Mayor admitted in his deposition that the Tribe in negotiations agreed to waive their immunity in order to allow the City to lien someone's property if the utilities bills were not paid. (*Id.* at 383–85).

It is clear from the evidence that the council members do not know whether other similarly situated entities are required to follow all of the city regulations that the city is demanding the Tribe to follow.

Councilmember Cornu did not know if other entities, such as the State of Nevada or the federal government, were required to get zoning approval or build according to city building code standards. (Plaintiffs' Exhibits in Support of Motion for Partial Summary Judgment, Cornu Depo., Vol. II, p. 81–83) However, the City wants the Tribe to abide by these regulations. During the vote held regarding whether to grant the Tribe sewer services, the City Council repeatedly stated that the only thing the city wanted was for the Tribe to go "by the rules that we have for everybody else, every contractor in town." (Ex. 38, Transcript of City Council Special Session, Apr. 13, 1999, P. 82). Nevertheless, the evidence shows that the Tribe has not been treated like other similarly situated developers and that the City is requiring more stringent standards from the Tribe. The Tribe has made offers to the City to alleviate some of their concerns, such as waiving immunity for liens, abiding by the City's building code, and making payments to the city in lieu of taxes. (Plaintiffs' Exhibits in Support of Motion for Partial Summary Judgment, Tewell Depo., p. 70 (stating that the tribe notified the City that it would abide by its rules and regulations governing the use of utilities)). The City, however, insists that the land be taken out of trust before it provides the Tribe with services.

In a motion for summary judgment, the moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The City has failed to produce any evidence to dispute the evidence introduced by the Tribe. The City has not demonstrated that there is a genuine issue for trial. Consequently, the Tribe's motion for summary judgment on the equal protection claim is granted.

## C. Substantive Due Process

■■■■ Plaintiffs assert that they have a substantive due process right that has been infringed by the City's denial of services. The "substantive" component of the due process clause forbids "arbitrary infringements of certain personal immunities that are 'implicit in the concept of ordered liberty,'" *Wroblewski v. City of Washburn,* 965 F.2d 452, 457 (7th Cir.1992) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)), or that "shock the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), overruled on other grounds by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Supreme Court urges courts to use caution and restraint in applying substantive due process. *See, e.g., Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225–26, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). The scope of substantive due process has been severely limited by the courts. *See, e.g., Saukstelis v. City of Chicago,* 932 F.2d 1171, 1173 (7th Cir.1991) ("Outside the realm of personal liberties, substantive due process may be a misnomer for the enforcement of rights expressly established in the Constitution and applied to the states through the fourteenth amendment").

■■■■ A plaintiff must establish that he has a "legitimate claim of entitlement" to the right being asserted. Although the plaintiffs contend that a substantive due process right is at issue, they fail to identify the nature of such a right or to show that they have an entitlement to such a right. There is no personal liberty at issue in the case. The Tribe has failed to show that it has a fundamental right or entitlement to the delivery of sewer service.

In addition, because of the highly destructive potential of overextending substantive due process protection, *see, e.g., Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), and because the doctrine's boundaries are not clear, the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff. *See, e.g., Graham v. Connor,* 490 U.S. 386, 394–5, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The plaintiffs also seek redress for other constitutional violations, including violation of equal protection and a taking without just compensation in violation of the Fifth Amendment. The takings clause itself addresses whether and under what circumstances the government may take an individual's private property. The equal protection clause limits state action that seeks to discriminate. Therefore, the plaintiffs have other constitutional provisions that directly address the illegal conduct alleged by the plaintiffs and there is no room for the concept of substantive due process. Consequently, summary judgment on the substantive due process claim is denied.

## D. Takings Claim

■■■■ The Tribe has also brought a Fifth Amendment takings claim against the City. A land use regulation is compensable as a taking under the Fifth Amendment only when the regulation denies all economically beneficial uses of the affected site. *See Penn Cent. Transp. Co. v. City*

*of New York,* 438 U.S. 104, 128–38, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The Fifth Amendment prohibition against taking without compensation does not guarantee the most profitable use of property, *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 592, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), and a diminution in value, standing alone, does not establish a taking. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 131, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The taking issue in these contexts is resolved by focusing on the uses the regulations permit. *Id.* at 131, 98 S.Ct. 2646.

The Tribe has failed to set forth specific facts showing that no genuine issue of material fact exists regarding the value of the property. The Fifth Amendment requires that the act by the government entity deprive the property of all economically beneficial use. The Tribe has invested a significant portion of money in the property by the simple act of purchasing the property. However, in support of their motion, the Tribe argues that without the sewer services the land "can not and will not be developed to its highest and best uses." A takings claim requires more than a diminution in value or a change in use. The Tribe argues that the land is "worthless" without the services, but has failed to provide sufficient evidence to support a grant of summary judgment on this claim. Therefore, we deny summary judgment on the takings claim.

## E. Breach of Contracts

▇ The Tribe alleges that the City's refusal to provide utilities to the 36 acres violates several existing contracts between the Tribe and the City. The Tribe relies on an Agreement reached by the City and the Tribe on January 5, 1988, for the construction of the sewer project and on its status as successor to the Oats agreement. The January 5, 1988, contract allegedly granted the Tribe the right to 100 sewer hookups without geographic limitations. The Oats Agreement contains 500 residential equivalents of service and hookups that are part of the Easement Agreement.

We find that genuine issues of material fact exist as to this claim. Each side has introduced evidence to dispute whether the January 5, 1988 agreement contemplated service outside the Colony and whether the Oats Agreement allows the Tribe to receive service. Consequently, summary judgment is denied.

## F. Anti–Trust Protections

▇ "Municipalities, on the other hand, are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign. *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978)." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985).

The Tribe relies on the Robinson–Patman Anti–Discrimination Act, 15 U.S.C. § 13 (1994), to assert their anti-trust claim. Section 2(a) of the Robinson–Patman Act provides in pertinent part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent

competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

15 U.S.C. § 13(a) (emphasis added). Section 13 of the Act addresses anti-trust acts relating to price discrimination. We find no such evidence present in this case. Section 13 does not apply. Furthermore, the plaintiffs have failed to show that the City's actions constitute a restraint of trade in violation of anti-trust laws.

## Conclusion

The plaintiffs have brought forth sufficient evidence to show that no genuine issue of material fact exists as to their section 1983 and equal protection claim. We find, however, the genuine issues of material fact do exist on plaintiffs' takings claim and breach of contract claims. Furthermore, we find that plaintiffs' claims of substantive due process and anti-trust violations are not cognizable.

***IT IS, THEREFORE, HEREBY OR-DERED THAT*** plaintiffs' motion for partial summary judgment (# 39) is ***GRANT-ED IN PART AND DENIED IN PART.*** The motion is **GRANTED** as to plaintiffs' section 1983 and equal protection claims. The motion is **DENIED** as to plaintiff's substantive due process claim, takings claim, breach of contract claim, and anti-trust violations claim.